UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| INSPECTION MANAGEMENT SYSTEMS, INC., | |
| Plaintiff, | 2:09-cv-00023-MCE-GGH |
| v. | **MEMORANDUM AND ORDER** |
| OPEN DOOR INSPECTIONS, INC., MICHAEL R. SCHEIDERICH; KEVIN SCHEIDERICH; BOB FISHER; RUN TANGENT, LLC, | |
| Defendants. | |

Through the present lawsuit, Plaintiff Inspection Management Systems, Inc. ("Plaintiff" or "IMS") seeks to prevent Defendants from marketing their software program for managing home inspections, on grounds that said program is unlawfully derived from software previously developed by IMS. Plaintiff claims that Defendant Michael Scheiderich subscribed to the IMS software and violated the contractual conditions of its use by making the software available to engineers in India for purposes of developing a competing product.

1

Presently before the Court are Defendants' Motion for Partial Summary Judgment and Motion to Dismiss/Motion to Strike, which, taken together, attack Plaintiff's Complaint in its entirety. For the following reasons, Defendants' Motions are granted in part and denied in part.[1]

**BACKGROUND**

According to Plaintiff's First Amended Complaint, IMS has developed unique scheduling, management, and business automation software that allows home inspectors to automate key business processes. First Amended Complaint ("FAC"), ¶ 5. In February of 2007, Michael Scheiderich registered as a user of the IMS software, and according to the FAC, he simultaneously executed an electronic End User Licensing Agreement ("EULA") as part of his user registration process.[2] Under the terms of the EULA (a copy of which is attached to the FAC as Exhibit "A"), a non-transferable license to use the IMS software was granted. The user also acknowledged IMS' exclusive proprietary rights in the system and agreed not to disclose any information, for a period of three years after accepting the EULA, to any person who has not also accepted the EULA.

///

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing. E.D. Cal. Local Rule 78-230(h).

[2] Michael Scheiderich, for his part, does not recall ever having accepted the terms of the EULA as a precondition to using the IMS software, or signing a hard copy of the agreement. April 6, 2009, Michael Scheiderich Decl., ¶ 2.

2

See EULA, Ex. "A" to Pl.'s FAC, ¶¶ 13, 18, 21.  Paragraph 21(b) of the EULA contains the following stipulation:

> You agree that the information being provided by IMS, Inc. is confidential and derives its value, in part, from its confidential nonpublic nature.  You further agree that in the event you breach this agreement, IMS, Inc., will suffer irreparable harm.

Id., ¶ 21(b).

The FAC goes on to allege that on October 1, 2008, individuals both using Michael Scheiderich's IMS logon simultaneously accessed the IMS software from Georgia (where Scheiderich allegedly resided) and from India.  Both users thereafter remained online utilizing the IMS program for approximately one hour.  FAC, ¶¶ 14-15.

IMS contends that the simultaneous logon was orchestrated so that software engineers in India could emulate its software.  IMS bases its contention in this regard on the fact that in November of 2008, IMS' President, Russell Colliau, attended a sales demonstration made by Michael Scheiderich to market new home inspection software called "Inspector Accelerator".  That software was developed under the auspices of a new company established for that purpose, Defendant Run Tangent, LLC.  During Scheiderich's sales demonstration, Colliau allegedly observed visual elements similar to those contained within the IMS software.  This caused him to conclude that Defendants had both illegally copied portions of the IMS code and incorporated those copied portions into their own server code.  See January 13, 2009, Colliau Decl., ¶¶ 31-32.

///
///

3

1    In support of that inference, Colliau cited both the
2 similarities he observed in the software and the close
3 relationship in time between the simultaneous logons to the IMS
4 program, as delineated above, and the demonstration of
5 Defendants' software thereafter.  Id.  In a subsequent
6 February 12, 2009, Declaration, Colliau elaborated further on
7 just what similarities he observed:

> Many elements of the Inspector Accelerator program, including visual elements, specialized business processes and the handling of the relationships between the realtors, clients and home inspector were extremely similar to unique elements of the IMS system.

11 February 12, 2009 Colliau Decl., ¶ 11.
12    Based on the initial evidence provided by IMS, along with
13 its claim that Defendants intended a launch of their new,
14 allegedly infringing software, at a national home inspectors
15 trade show to be held in Florida between January 21, 2009, and
16 January 25, 2009, the Court granted IMS' initial request for a
17 temporary restraining order on January 16, 2009 in order to
18 protect against the threat of irreparable harm pending a more
19 thorough review of the claims made by IMS.
20    Factually, Defendants deny that they copied the IMS software
21 in any way in developing their own home inspection software.
22 Defendants point to the fact that because the IMS software is web
23 based, a user like Scheiderich lacked access to either the source
24 or object codes underlying the IMS system.  April 6, 2009,
25 Michael Scheiderich Decl., ¶ 3.
26 ///
27 ///
28 ///

4

Given the fact that Plaintiff's copyright application is still pending, Plaintiff's FAC deletes the copyright and trademark infringement claims included within the original complaint. IMS continues to assert a claim for breach of contract, given IMS' claim that Schederich breached the terms of his EULA in emulating the IMS software. Moreover, the FAC also asserts counts alleging misappropriation of trade secrets and claims for unfair business practices and false advertising under California law.

**ANALYSIS**

**I.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants move for summary judgment as to Plaintiff's First and Second Causes of Action arguing: 1) the end user agreement on which Plaintiff bases its claims was not operative during the alleged breaches; and 2) Defendants could not, as a matter of law, have acquired Plaintiff's trade secrets through the web-based platform.

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-324 (1986).

5

1  Rule 56 also allows a court to grant summary adjudication on
2 part of a claim or defense.  See Fed. R. Civ. P. 56(a) ("A party
3 seeking to recover upon a claim ... may ... move ... for a
4 summary judgment in the party's favor upon all or any part
5 thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp.
6 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter
7 Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).
8 The standard that applies to a motion for summary adjudication is
9 the same as that which applies to a motion for summary judgment.
10 See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F.
11 Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

16 Celotex Corp. v. Catrett, 477 U.S. at 323(quoting Rule 56(c)).
17 If the moving party meets its initial responsibility, the burden
18 then shifts to the opposing party to establish that a genuine
19 issue as to any material fact actually does exist.  Matsushita
20 Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87
21 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-
22 89 (1968).

23  In attempting to establish the existence of this factual
24 dispute, the opposing party must tender evidence of specific
25 facts in the form of affidavits, and/or admissible discovery
26 material, in support of its contention that the dispute exists.
27 Fed. R. Civ. P. 56(e).
28 ///

6

The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Schuylkill and Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 586-87.

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.
///

Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

Federal Rule of Civil Procedure 56(a) permits a party to file a Motion for Summary Judgment "any time after: (1) 20 days have passed from commencement of the action; or (2) the opposing party serves a motion for summary judgment." Nevertheless, pursuant to Rule 56(f):

> If a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:
>
> (1) deny the motion;
> (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or
> (3) issue any other just order.

Thus, "'Federal Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence.'" Burlington Northern Santa Fe R. Co. v. Assiniboine and Sioux Tribes of Fort Peck, 323 F.3d 767, 773 (9th Cir. 2003), quoting United States v. Kitsap Physicians Serv., 314 F.3d 995, 1000 (9th Cir. 2002). "The cases construing Rule 56(f) suggest that the denial of a Rule 56(f) application is generally disfavored where the party opposing summary judgment makes (a) a timely application which (b) specifically identifies (c) relevant information, (d) where there is some basis for believing that the information sought actually exists. Summary denial is especially inappropriate where the material sought is also the subject of outstanding discovery requests." VISA Intern. Service Ass'n v. Bankcard Holders of America, 784 F.2d 1472, 1475 (9th Cir. 1986).

///

"Where...a summary judgment motion is filed so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely." Burlington Northern, 323 F.3d at 773.

In this case, it appears that the parties dispute which agreement applied during the period of the alleged breaches and whether an individual could have accessed Plaintiff's allegedly proprietary technology through a web-based login. Defendants adamantly assert that they have put forth undisputed facts as to both of the above conflicts. However, in actuality, the instant arguments are based, in large part, on the assertions of the Defendants themselves. Defendants further rely on various of Plaintiff's statements and instances of Plaintiff's silence, from which the Court is now asked to infer admissions. Plaintiffs respond with their own declarations to the contrary.

Thus, without the benefit of any discovery, the Court is being asked to render final judgment based solely on each parties' assertions allegedly supporting their positions with respect to the above conflicts. Those statements, at their most basic, create triable issues of fact. Moreover, even if no disputed facts were before this Court, the Court is simply not willing to grant summary judgment at such an early juncture and on such an undeveloped record. Accordingly, Defendant's Motion for Partial Summary Judgment is denied without prejudice.

///
///
///

**II. DEFENDANTS' MOTION TO DISMISS/MOTION TO STRIKE**

By way of its Motion to Dismiss, Defendants argue that: 1) Plaintiff's First Cause of Action states a breach of contract claim only against Defendant Scheiderich; 2) Plaintiff's California Unfair Competition claim is preempted by the Copyright Act and the California Uniform Trade Secret Act; and 3) Plaintiff failed to state a claim under California's False Advertising Law. Defendants also move to strike various of Plaintiff's allegations as relevant only to the now withdrawn federal copyright claims.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted).

///
///

1 Factual allegations must be enough to raise a right to relief
2 above the speculative level.  Id. at 1965 (citing 5 C. Wright &
3 A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d
4 ed. 2004) ("The pleading must contain something more...than...a
5 statement of facts that merely creates a suspicion [of] a legally
6 cognizable right of action")).
7    The Court may strike "from any pleading any insufficient
8 defense or any redundant, immaterial, impertinent, or scandalous
9 matter."  Fed. R. Civ. P. 12(f).  "(T)he function of a 12(f)
10 motion to strike is to avoid the expenditure of time and money
11 that must arise from litigating spurious issues by dispensing
12 with those issues prior to trial...."  Sidney-Vinstein v. A.H.
13 Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter
14 is that which has no essential or important relationship to the
15 claim for relief or the defenses being pleaded.  Fantasy, Inc. v.
16 Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other
17 grounds Fogerty v. Fantasy, Inc., 510 U.S. 517, 114 S. Ct. 1023,
18 127 L. Ed. 2d 455 (1994) (internal citations and quotations
19 omitted).  Impertinent matter consists of statements that do not
20 pertain, and are not necessary, to the issues in question.  Id.
21    Nevertheless, a court should "freely give" leave to amend
22 when there is no "undue delay, bad faith[,] dilatory motive on
23 the part of the movant, . . . undue prejudice to the opposing
24 party by virtue of . . . the amendment, [or] futility of the
25 amendment...."  Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S.
26 178, 182 (1962).
27 ///
28 ///

Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

### A. Plaintiff's Breach of Contract Claim

According to Defendants, Plaintiff has stated a breach of contract claim only against Defendant Michael Scheiderich. Plaintiff argues, however, that, through Defendant Scheiderich, both Open Door and Run Tangent consented to the terms of the EULA. Plaintiff additionally claims that Defendant Scheiderich engaged in a conspiracy with the remaining Defendants.

"The standard elements of a claim for breach of contract are: '(1) the contract, (2) plaintiff's performance or excuse for nonperforamnce, (3) defendant's breach, and (4) damage to plaintiff therefrom." Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (4th Dist. 2008), quoting Regan Roofing Co. v. Superior Court, 24 Cal. App. 4th 425, 434-435 (4th Dist. 1994).

By way of the FAC, Plaintiff avers only that Defendant Scheiderich executed any agreement with Plaintiff.  None of the remaining Defendants are alleged to be parties to any agreement, and Plaintiff has failed to allege any facts supporting the inference that any of those Defendants are indirectly liable for Defendant Michael Scheiderich's alleged breach.

///
///

Thus, Defendants' Motion to Dismiss Plaintiff's First Cause of Action as to all Defendants except Michael Scheiderich is granted with leave to amend.

### B.   Plaintiff's Unfair Competition Claim

Defendants next assert that Plaintiff's unfair competition claim, arising under California Business and Professions Code § 17200, et seq., is preempted by the Copyright Act, 17 U.S.C. § 301, and the California Uniform Trade Secret Act, California Civil Code § 3425, et seq. The Court agrees that Plaintiff's state law claim is preempted under the former argument and, therefore, declines to address the latter.

"The Copyright Act explicitly preempts state laws that regulate in the area of copyright, stating that 'all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106...are governed exclusively by this title.'" Sybersound Records, Inc. v. UAV Corp., 517 F.3d 1137, 1150 (9th Cir. 2008), quoting 17 U.S.C. § 301(a).  "The Copyright Act preempts a state law cause of action when two requirements are met.  First, the rights asserted under state law must be rights that are equivalent to those protected by the copyright act. Second, the work involved must fall within the subject matter of the Copyright Act as set forth in 17 U.S.C. §§ 102 and 103." Silicon Image, Inc. v. Analogix Semiconductor, Inc., 2007 WL 1455903, *7 (N.D. Cal.), quoting Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998) (internal quotations omitted).

1    In opposition, Plaintiff argues only that its claims are not
2 preempted because Plaintiff does not currently own a valid
3 copyright.  However, the existence of a valid copyright is not a
4 prerequisite to a preemption finding.  See Kodadek, 152 F.3d at
5 1213 (determining state law unfair competition claim was
6 preempted despite the fact that Plaintiff never properly received
7 a copyright registration, which failure foreclosed his
8 infringement cause of action); see also Trandes Corp. v. Guy F.
9 Atkinson Co., 996 F.2d 655, 658 (requirement that copyright be
10 registered pursuant to 17 U.S.C. § 411(a) prior to filing a
11 copyright infringement action was irrelevant to determining the
12 preemptive scope of § 301).  Thus, because the Court finds
13 Plaintiff's Unfair Competition claim, as pled, is identical to a
14 claim for copyright infringement, it is preempted by the
15 Copyright Act, and Defendants' Motion to Dismiss Plaintiff's
16 Second Cause of Action is granted with leave to amend.

18    **C.   Plaintiff's False Advertising Claim**

20    Defendants next argue that Plaintiff failed to state a false
21 advertising claim because: 1) Plaintiff does not allege a
22 consumer protection claim; and 2) Plaintiff's allegations do not
23 rise to the level required under Federal Rule of Civil Procedure
24 9(b).  "Plaintiff acknowledges that further clarification about
25 the type and nature of the false and misleading statements may be
26 needed."  Opposition to Motion to Dismiss, 5:23-24.
27 ///
28 ///

14

The Court agrees. Plaintiff's current averments are wholly conclusory and, as such, fail to state a claim. Thus, Defendant's Motion to Dismiss is granted with leave to amend.

### D.  Motion to Strike

Finally, Defendants Move to Strike the allegations of Plaintiff's FAC that relate solely to its original Copyright Infringement claims, specifically FAC ¶¶ 29-36. Additionally, Defendants argue that ¶ 2, which claims jurisdiction is proper under 28 U.S.C. §§ 1331 and 1338, should be stricken as well.

Defendants specifically ask that the Court strike the following language:

> 29. On information and belief, Defendants illegally copied portions of the code and incorporated these copied portions into their own server code.
>
> 30. On information and belief, Defendants have illegally utilized visual elements from screens of Plaintiff's software.
>
> 31. On information and belief, Defendants' website and server contain copied material that is substantially similar to portions of Plaintiff's protected computer code and screens.
>
> 32. Defendants' aforesaid acts constitute a direct infringement of Plaintiff's copyrights because they contribute so substantially to the end users' actions that Defendants are liable for the end users' infringing activity directly.
>
> 33. Defendants' illegal copying was not authorized by Plaitniff [*sic*], and was performed without Plaintiff's knowledge.
>
> 34. Defendants' copying was willful.
>
> 35. Defendants copying was for Defendants' financial gain.

///

15

1          36.  Defendants' copying was for Defendants' personal
                notoriety and reputation within the home inspector
2               community.

3 This Court agrees with Defendants that Paragraph 2, Plaintiff's
4 jurisdictional allegations, and Paragraph 32 should be stricken.
5 Accordingly, Defendants' Motion is granted with leave to amend as
6 to those averments.  Nevertheless, the Court finds Plaintiff's
7 remaining allegations may be pertinent to Plaintiff's breach of
8 contract claim, and Defendants' Motion to Strike those
9 allegations is denied.

**CONCLUSION**

For the reasons just stated, Defendants' Motion for Summary
Judgment (Docket No. 57) is DENIED without prejudice and, in
accordance with the this Memorandum and Order, Defendants' Motion
to Dismiss and Motion to Strike (Docket No. 64) are GRANTED with
leave to amend in part and DENIED in part.  Plaintiff may, but is
not required to, file an amended complaint, not later than twenty
(20) days after the date this Memorandum and Order is filed
electronically.  If no amended complaint is filed within said
twenty (20)-day period, without further notice, this case will be
dismissed without leave to amend.

    IT IS SO ORDERED.

Dated: July 8, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

16