UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| INSPECTION MANAGEMENT SYSTEMS, INC., | No. 2:09-cv-00023-MCE-GGH |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| OPEN DOOR INSPECTIONS, INC., MICHAEL R. SCHEIDERICH; KEVIN SCHEIDERICH; BOB FISHER; RUN TANGENT, LLC, | |
| Defendants. | |

Through the present lawsuit, Plaintiff Inspection Management Systems, Inc. ("Plaintiff" or "IMS") seeks to prevent Defendants from marketing their software program for managing home inspections, on grounds that said program is unlawfully derived from software previously developed by IMS.  Plaintiff claims that Defendant Michael Scheiderich subscribed to the IMS software and violated the contractual conditions of its use by making the software available to engineers in India for purposes of developing a competing product.

1

Plaintiff further contends that the companies with which Defendant Scheiderich was affiliated, Defendants Open Door Inspections and Run Tangent, LLC, either ratified Scheiderich's actions or alternatively, that Scheiderich acted as their undisclosed authorized agent in subscribing to and using Plaintiff's software.  Presently before the Court is a Motion to Dismiss Count I and Count III of Plaintiff's Second Amended Complaint, brought by Defendants Open Door Inspections, Inc. Michael Scheiderich, and Run Tangent, LLC (collectively referred to as "Defendants" unless otherwise indicated).  Defendants' Motion is brought pursuant to Federal Rule 12(b)(6) on grounds that said causes of action fail to state any viable claim.[1]

**BACKGROUND**

According to Plaintiff's First Amended Complaint, IMS has developed unique scheduling, management, and business automation software that allows home inspectors to automate key business processes.  Second Amended Complaint ("SAC"), ¶ 5.  In February of 2007, Michael Scheiderich registered as a user of the IMS software, and according to the SAC, he simultaneously executed an electronic End User Licensing Agreement ("EULA") as part of his user registration process.  Under the terms of the EULA (a copy of which is attached to the SAC as Exhibit "A") a non-transferable license to use the IMS software was granted.

---

[1] Because oral argument will not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 78-230(h).

2

1 The user also acknowledged IMS' exclusive proprietary rights in
2 the system and agreed not to disclose any information, for a
3 period of three years after accepting the EULA, to any person who
4 has not also accepted the EULA.  See EULA, Ex. "A" to Pl.'s SAC,
5 ¶¶ 13, 18, 21.  Paragraph 21(b) of the EULA contains the
6 following stipulation:

> You agree that the information being provided by IMS,
> Inc. is confidential and derives its value, in part,
> from its confidential nonpublic nature.  You further
> agree that in the event you breach this agreement, IMS,
> Inc., will suffer irreparable harm.

10 Id., ¶ 21(b).

11      According to Plaintiff, at all times relevant to
12 Scheiderich's activities as alleged in the SAC, he acted as an
13 undisclosed duly authorized agent for Defendants Run Tangent, LLC
14 and Open Door Inspections, Inc.  Alternatively, Plaintiff
15 alleges that Run Tangent and Open Door ratified Defendant
16 Scheiderich's actions.  SAC, ¶ 11.

17      The SAC goes on to allege that on October 1, 2008,
18 individuals both using Michael Scheiderich's IMS logon
19 simultaneously accessed the IMS software from Georgia (where
20 Scheiderich allegedly resided) and from India.  Both users
21 thereafter remained online utilizing the IMS program for
22 approximately one hour.  FAC, ¶¶ 15-16.

23      IMS contends that the simultaneous logon was orchestrated so
24 that software engineers in India could emulate its software.  IMS
25 bases its contention in this regard on the fact that in November
26 2008, IMS President, Russell Colliau, attended a sales demonstration
27 made by Michael Scheiderich to market new home inspection software
28 similar to that developed by Plaintiff.  SAC, ¶¶ 19-22.

3

Based on the initial evidence provided by IMS, along with its claim that Defendants intended a launch of their new, allegedly infringing software, at a national home inspectors trade show to be held in Florida between January 21, 2009, and January 25, 2009, the Court granted IMS' initial request for a temporary restraining order on January 16, 2009 in order to protect against the threat of irreparable harm pending a more thorough review of the claims made by IMS.  Plaintiff's subsequent request for a preliminary injunction was, however, denied.

Defendants then proceeded to file a Motion for Partial Summary Judgment, along with a Motion to Dismiss in an attempt to adjudicate in their favor the claims being asserted by Plaintiff. By Memorandum and Order filed July 9, 2009, the Court denied Defendants' summary judgment claims, but granted Defendants' Motion to Dismiss Plaintiff's claims for breach of contract, unfair competition, and false advertising.  Because leave to amend was afforded, Plaintiff filed its SAC on July 29, 2009. Defendants subsequently filed the Motion to Dismiss now before the Court, which again attacks Plaintiff's breach of contract claim (Count I) and false advertising claim (Count III) as legally insufficient.

**STANDARD**

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party.

Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the...claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, --- U.S. ----, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Id. at 1964-65 (internal citations and quotations omitted). Factual allegations must be enough to raise a right to relief above the speculative level. Id. at 1965 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004) ("The pleading must contain something more...than...a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

A court should nonetheless "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory motive on the part of the movant,...undue prejudice to the opposing party by virtue of...the amendment, [or] futility of the amendment...." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). Generally, leave to amend is denied only when it is clear the deficiencies of the complaint cannot be cured by amendment. DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).

5

## ANALYSIS

### A.    Plaintiff's Breach of Contract Claim

According to Defendants, Plaintiff has still not stated a breach of contract claim (Count I of the SAC) against anyone other than Defendant Michael Scheiderich.

"The standard elements of a claim for breach of contract are: (1) the contract, (2) plaintiff's performance or excuse for nonperforamnce, (3) defendant's breach, and (4) damage to plaintiff therefrom." Wall Street Network, Ltd. v. New York Times Co., 164 Cal. App. 4th 1171, 1178 (4th Dist. 2008), quoting Regan Roofing Co. v. Superior Court, 24 Cal. App. 4th 425, 434-435 (4th Dist. 1994).

As compared with the First Amended Complaint, which identified only Plaintiff avers only that Defendant Scheiderich as being a party to any agreement with Plaintiff, the SAC alleges that Scheiderich was acting within his capacity as an undisclosed duly authorized agent of both Defendants Run Tangent, LLC and Open Door Inspections, Inc.  Alternatively, Plaintiff contends that both of said companies ratified Defendant Schederich's actions.  SAC, ¶ 11.  Because those allegations are sufficient for pleading purposes, Defendants' Motion to Dismiss Count I will be denied.

///
///
///
///
///

6

**B.    Plaintiff's False Advertising Claim**

As opposed to the First Amended Complaint, which based its false advertising claim on a violation of California Business and Professions Code § 17500, Count III of the SAC now purports to be a false advertising claim premised on violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).  That change in itself, however, does nothing to resolve the substantive deficiencies noted by the Court in its previous July 9, 2009 Order, which found the allegations of the First Amended Complaint "wholly conclusory", and which noted Plaintiff's own acknowledgment that "clarification about the type and nature of the false and misleading statements may be needed." July 9, 2009 Order, 14:8-15:3.

The only thing Plaintiff does to rectify this deficiency is to allege that Defendants' advertising in connection with the sale of its software and services is false, and that as a result thereof Plaintiff has suffered a loss of business.  SAC, ¶¶ 45, 47.  Those allegations, however, are just as conclusory as the assertions already deemed insufficient by the Court.  Heightened pleading standards under Federal Rule of Civil Procedure 9(b) apply to false advertising claims brought under the Lanham Act. AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941, 948-49 (N.D. Cal. 2003) (dismissing Lanham Act false advertising claim for failure to allege claim with any particularity, as opposed to only "mimic[ing] the elements of the cause of action" without pleading sufficient facts).  This heightened standard has plainly not been met by the SAC in alleging false advertising.

7

**CONCLUSION**

Given the foregoing, Defendants' Motion to Dismiss (Docket No. 91) is DENIED with respect to Count I of Plaintiff's SAC but granted as to Count III. While one additional opportunity to amend will be afforded, Plaintiff is cautioned that any further amended pleading must state any renewed false advertising claim with more particularity than has been done in either the First or Second Amended Complaint. Should Plaintiff choose to file a Third Amended Complaint, it must do so not later than twenty (20) days after the date this Memorandum and Order is filed electronically.

IT IS SO ORDERED.

Dated: October 19, 2009

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE